### Illinois Steel Company v. Thomas Szutenbach.

1. ORDINARY CARE—*Depends upon Surrounding Circumstances.*— Ordinary care depends upon the circumstances under which such conduct is required. It is the duty of a person approaching a railroad crossing to look out and make use of his senses, to determine whether it is safe for him to cross.

2. SAME—*Approaching Railroad Crossings.*—There is a distinction as to the nature of railroad crossings. Where one approaches a single track used only for switching and yard purposes upon which a few freight cars are standing to which no engine is attached, it would be unnatural for him to conclude that to attempt to pass over, by the end of one of the cars, would be dangerous, and the court can not say that in such case a reasonably prudent man would not assume that to pass over was reasonably safe.

3. PLEADING—*Allegations not Necessary to Prove.*—Where an allegation of a declaration amounts to a mere statement that it was necessary for the plaintiff to cross a certain railroad track, the purpose for which he was crossing the same is immaterial.

4. LIMITATIONS—*As to Amendments.*—Where allegations are introduced into a declaration in an action for personal injuries, more

than two years after the cause of action accrued, if the gist of the action remains the same, a plea of the statute of limitations is inapplicable.

5. DAMAGES—*Duty of the Jury.*—It is the duty of the jury in a case for personal injuries to give the plaintiff such damages as appears from evidence he has clearly suffered, resulting from the defendant's negligence, although they may not be able to give adequate compensation for the entire injury, when some portion of it in their judgment is the result of a failure to adopt reasonable or ordinary measures to lessen or mitigate the result of the injury.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed June 1, 1896.

WILLIAMS, HOLT & WHEELER, and E. PARMALEE PRENTICE, attorneys for appellant.

KAVANAGH & O'DONNELL, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

This was an action based upon the alleged negligence of appellant, on account of which, it is said, appellee received severe injuries, for which he has recovered a judgment for $8,500.

Appellee was, in July, 1892, working for Dolese & Shepard, paving contractors, at the Illinois Steel Company's yard. His business was shoveling cinders as they came out of the furnaces, and loading them into wagons.

It was the custom of the men thus engaged, to, when so inclined, leave their work once during the forenoon and once during the afternoon, to go to Ashland avenue for beer.

In order to reach Ashland avenue from the place where appellee was working, he had either to go upon a plank roadway, which ran first in a northwesterly direction alongside the railroad tracks, then turned to the west, crossing three tracks, then turned to the south until it reached a plank crossing running directly west over one railroad track to a gate which led into Mill street, running to Ashland avenue; or, appellee could have gone from where he worked directly

west, over some seven or eight railroad tracks to the plank walk running west, over which ran one railroad track. By going directly west from where he was working, the distance to the plank walk that ran directly west, was about one-third what it would be to follow the plank roadway by which it was designed people should go from the place where appellee was working to the gateway leading into Mill street.

Two of the principal questions in dispute in this case, and concerning which there is contradictory evidence, are as to whether appellee and his companions in going toward Mill street followed the long distance round, by way of the plank roadway, or, disregarding it, walked westwardly directly across the railroad tracks; and also as to whether appellee was injured when on the track which ran over the plank walk that led directly west into Mill street, said plank walk being about fifty feet in length, or was injured at the railroad track, about fifty feet east from the east end of the fifty-foot plank walk running east and west, leading into Mill street.

As is manifest, if he was injured while upon the railroad track that ran from the fifty-foot plank walk, connecting with Mill street, he was injured while upon a crossing made for the use of teams and pedestrians; while if he was injured when on the track some seventy-five feet east of this, he was hurt at a place not designed for any one to cross or be, except when engaged in the service of the railroad company and about its business.

As to these matters, concerning which is the chief contention in respect to the facts, while we should have been better satisfied if the conclusion of the court and jury before whom this case was tried had been other than it was, we do not find in this regard any such preponderance of evidence in favor of the appellant as would warrant us in reversing the action of the court below. The verdict of the jury in this case comes to us sanctioned by the action of the judge before whom the case was tried; he saw and heard the witnesses, and therefore had an opportunity of judging as to

what the truth in respect to these matters is that we do not possess.

It is urged that the appellee failed to show that he was in the exercise of ordinary care at the time of the accident. If appellant's view of the facts is the true one, then the appellee did not exercise ordinary care; but if the conclusion of the jury as to the facts is correct, then we have only to consider what ordinary care at such a time and such a place requires, and whether the jury were warranted in finding as they did.

What is ordinary care depends upon the circumstances under which such conduct is required. It undoubtedly is the rule in this State that it is the duty of a person approaching a railroad crossing to look out—make use of his senses to determine whether it is safe for him to cross. There is, however, a great distinction as to the nature of railroad crossings. Where one approaches a single track, used only for switching and yard purposes, upon which a few freight cars are standing, to which no engine is attached, it would be unnatural for him to conclude that to attempt to pass over this crossing by the end of one of the cars would be dangerous; and we are unable to say that in such case a reasonably prudent man would not do as appellee apparently did—assume that to pass over was reasonably safe.

Appellant also urges that the appellee having alleged in his declaration that it became necessary for him to cross a certain railroad track, it was incumbent upon him to prove the existence of such necessity, and that by this is meant, not the mere wish upon the part of the appellee, but a compulsion, or compelling force, existing as to his actions, which he could not reasonably resist.

We do not regard the allegation of the appellee's declaration in this regard as amounting to more than a statement that, for the purpose of accomplishing some lawful design upon his part, it was necessary that he should pass over the railroad track in question. However unwise or immoral in the view of many people it may have been for the appellee, upon that hot July forenoon, to go for a drink of beer, it

was something which he had a lawful right to do, and having such lawful right and desire, whatever he had to do in order to accomplish his wish, was, within the meaning of the declaration, necessary; that is to say, the meaning of the declaration is that in order to get the beer he wished for, it was necessary that he should cross this track—not that it was necessary he should have the beer.

We do not think the statute of limitations applicable to the allegations of injury to the appellee's mind and memory, which were introduced into the declaration more than two years after the action was begun. The gist of an action based upon breach of duty is the negligence, and not the consequent injury resulting therefrom. Wood on Limitations, 1st Ed., Sec. 179.

It is quite manifest appellee has not two separate causes of action for the one act of negligence; that is, he could not have maintained one action based upon the negligence of appellant and the loss of his foot, and another based upon the negligence of appellant and the injury to his head.

Whether the injury to appellee's head was known to him or to his counsel at the time the first declaration was filed is immaterial. If such injury is the result of appellant's negligence, the appellee is entitled to recover not only for all the loss he has suffered up to the time of trial, but for prospective pain and suffering he may endure after trial; and at what time a specification of injuries consequent upon the negligence of appellant was introduced into the declaration is immaterial, so far as the statute of limitations is concerned. What appellee introduced into his declaration by the amendment, concerning his mental impairment, was not a statement of a new cause of action, or, indeed, strictly of a new injury, but rather of an additional consequence of an injury and negligence before declared upon.

It is also urged by appellant that the following instruction, by it asked, should have been given:

" If you believe from the evidence that the plaintiff neglected or refused to permit or adopt reasonable and ordinary measures to lessen or mitigate the results of the injuries re-

ceived by him, and if you shall believe from the evidence that his present condition is not entirely the natural or necessary result of said injuries, but is the result in a greater or less degree, of the lack of ordinary and reasonable care by the plaintiff to adopt said measures, then if you bring in a verdict against the defendant, you should add nothing in such verdict for anything in plaintiff's present condition which would have been prevented by said measures; and if you are unable to ascertain from the evidence, any guide or way to separate the items and elements of damage which came from the alleged negligence of defendant, and which, if any, came from the acts or the omissions of the plaintiff to use said ordinary and reasonable measures, if there were such acts or omissions, then your verdict should not include more than nominal damage to be charged upon the Steel company."

The appellee had, in the view of the jury, been severely injured in consequence of the negligence of the appellant.

The appellant's foreman testified that the doctor to whom appellee was taken by such foreman, said that appellee's foot was " hurt pretty bad," and that he, the doctor, thought that appellee would have to have it taken off.   Here was evidence warranting, in the view of the jury, the giving of substantial damage, and under which we do not think the jury should have been instructed that if they were unable to ascertain from the evidence any guide or way to separate the items and elements of damage which came from the alleged negligence of appellant, from those, if any, which came from the acts or the omissions of the appellee to use ordinary or reasonable measures, that their verdict should not include more than nominal damage to be charged upon the Steel company.

It was the duty of the jury, under their view of the evidence, to give to the appellee such damages as he had clearly suffered, or as they believed from the evidence he had suffered solely as a result of the appellant's negligence, although they might not be able to give to the appellee adequate compensation for the entire injury that had come to him, some portion of such injury being, in their judgment, the result

of his failure to adopt reasonable and ordinary measures to lessen or mitigate the results of the hurt received by him.

There are, in our opinion, as is urged, suspicious circumstances attending the testimony and conduct of the witness, Grzieskowiak, but not such as call for a reversal of this judgment. The circumstances attending the testimony of this witness, like others which we have mentioned, were presented to the judge who tried the cause, and we do not feel justified in interfering with his conclusions.

We do not regard the testimony of the witness Sprys as an impeachment of the witness Grzieskowiak, but as a contradiction of him upon a material and not unimportant point.

The accident in this case happened, like many others to which our attention has been called, from the practice of "kicking" cars in a railroad yard. The verdict of the jury was such as might have been expected when a poor laborer brings suit against a great corporation.

As before indicated, we do not feel confident that under the real facts the appellant should have had this judgment rendered against it; nevertheless we are not prepared to say that, taking its own statement as true, it was entirely free from blame. Nor do we think there is any reason for believing that another trial would bring about a result substantially variant from that arrived at in the one already had.

The judgment of the Superior Court is affirmed.